IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20-cv-00449 |
| | ) | |
| v. | ) | |
| | ) | |
| RANDALL MATHENA, *et al.*, | ) | By: Elizabeth Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Steve Riddick, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. There are thirteen defendants currently in the case,[1] but his claims against all the defendants stem from the same basic events. Riddick alleges that defendants removed him from the "Seriously Mentally Ill/Shared Alliance Management" pod at Red Onion State Prison ("Red Onion") in 2014, and then they failed to return him to that housing pod on July 11, 2017, and throughout the next three years, despite his repeated requests to be housed there. He asserts that it was the best fit for him because of his mental health needs. His claims are not entirely clear, but the court construes his complaint—as defendants do—as including a First Amendment claim, Eighth Amendment claim, Fourteenth Amendment due process claim, and a state-law claim of willful and wanton negligence.

Pending before the court is a motion to dismiss filed by all defendants (Dkt. No. 23), in which they seek dismissal of all claims against them on several different grounds.[2] Riddick has not directly responded, but he filed his own motion for summary judgment (Dkt. No. 29; *see also*

---

[1] The defendants are Randall Mathena, Jeffery Kiser, Tori Raidford, Scott Richeson, Henry Ponton, Marcus Elam, David Robinson, Denise Malone, Larry Collins, Walter Swiney, Shannon Fuller, Jeffery Artrip, and Arvil Gallihar. They are identified in a document titled as an "Amended Complaint" (Dkt. No. 5), but that document does not contain any factual allegations; it merely lists the defendants.

[2] Because it dismisses Riddick's claims for failure to state a claim, the court does not address all of the grounds argued by defendants.

"Additional Evidence" in support of his summary judgment motion, Dkt. No. 31), which defendants have opposed (Dkt. No. 30). Riddick's motion addresses defendants' arguments to some degree, and it is more properly construed as a response in opposition to the motion to dismiss. For the reasons set forth herein, the court will grant defendants' motion to dismiss. To the extent Riddick's motion is a summary judgment motion, it will be denied as moot.

Also, in December 2022, Riddick sent a letter to the court complaining about the length of time that the motions had been pending and requesting that the court, when deciding cases, give "preference and urgency" to his cases, including this one.[3] (Dkt. No. 59.) To the extent that letter is properly construed as a motion, it is denied as moot in light of the court's ruling.

I. BACKGROUND

A. Factual Background[4]

Riddick's claims stem from the repeated denials of his request to be housed in what he calls the "SIP/SAM" pod. He describes the pod as a "combined" pod of two units. According to him, the SAM unit houses offenders with mental disorders, and the SIP unit houses inmates who refuse to enter the general population. He claims that the goal of the unit is to slowly integrate inmates into a general population setting, but that "inmates don't have to leave the SIP/SAM and return to population if they're not ready to do so." (Compl. 5, Dkt. No. 1.)[5]

---

[3] The case previously was assigned to two other district judges. In January 2022, the month after the motions became ripe, the case was transferred to the undersigned. In June 2022, the case was stayed after it, along with numerous other cases filed by Riddick, were referred to mediation. Riddick was appointed counsel solely to assist with the purposes of the mediation, which ultimately was unsuccessful. The case was unstayed on December 2, 2022.

[4] The facts are taken from Riddick's complaint.

[5] In their briefing, defendants state that Riddick is referring to the "Seriously Mentally Ill or Offender with Serious Mental Illness/Shared Allied Management Unit," which they refer to as the SMI/SAM pod, and which is described in VDOC's Operating Procedure (OP) 830.5. The parties have not provided that OP, although the most recent version—effective November 2020 and amended since then on numerous dates—is publicly available on VDOC's website. *See* https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-830-5.pdf (last visited Mar. 15, 2023). In any event, because the court is ruling on a motion to dismiss, it will use Riddick's terminology. Neither the name of the unit nor the precise reason inmates are housed there affects the court's analysis herein.

Although Riddick was housed in the SIP/SAM pod from 2012 through July 17, 2014, he was then removed and housed in C Building. In July 2017, he completed the required programming and thought he would be returned to the SIP/SAM pod because he met the criteria, but he was not moved there. Nor was he given a reason why he was being denied placement in that pod. (Compl. 1, Dkt. No. 1.)

Throughout the rest of 2017 and 2018, Riddick filed complaint forms and grievances about not being returned in the SIP/SAM pod. In response to one of them, Lt. Boyd stated that Riddick would be placed in the SIP/SAM pod. In response to another, around October 30, 2019, he was told by Warden Kiser that he would be put in the SIP/SAM pod once it was moved to D-1 pod. But when the pod was moved, he was not assigned to it. (*Id.* at 2–3.) Throughout 2019 and 2020, he continued to request placement in the SIP/SAM pod, both via letters and by telling correctional officers, supervisory staff, "treatment officers," and counselors of his desire. (*Id.* at 3–4.)

In August, 2019, Dr. Eric McDuffie, a psychiatrist, recommended Riddick for the SIP/SAM pod and wrote in Riddick's mental health records that the pod would be a good fit for him. (*Id.* at 6.) Nonetheless, he was not reassigned to that pod, despite it being, "as far as [Riddick knew], . . . the only pod that fit [his] needs." (*Id.* at 7.)

On specific dates in 2018, 2019, and 2020, Riddick also told the members of the external review team ("ERT")—whose names he lists in his complaint—that he wanted to be placed in the SIP/SAM pod. (*Id.* at 4.) He told the ERT about his "mental disorders" and his belief that he "qualifie[d] for the SAM unit." (*Id.* at 4.)

Riddick was never moved to that pod, however. (*Id.* at 4–5.) Instead, the ERT assigned him to a unit where, after 90 days, he would have had a cell mate or be in a "population environment." (*Id.* at 6.) Because he refused to go to that housing unit, he was given two

3

disciplinary charges, which resulted in fines and the loss of certain privileges, and he was then kept in segregation. (*Id.* at 7.) Riddick claims that his stay in segregation caused him mental and physical harm and resulted in him being diagnosed with certain mental disorders and placed on medication. (*Id.* at 7–8.)

Although not alleged in his complaint, Riddick's sworn opposition to the motion to dismiss states that he was told that defendant Collins did not place him in the SIP/SAM a second time because he did not do well in that pod and that he was "too aggressive." (Opp'n 2–3, 4, Dkt. No. 29.) He admits that he had what he calls "some isolated incidents" while in the SIP/SAM pod (*id.* at 3), but he argues that there were several "way more aggressive" inmates in the pod when he was housed there. (*Id.* at 4). He also emphasizes that he was told he would return to that pod, by both Lt. Boyd and Warden Kiser, but then was not assigned to it. (*Id.* at 3.)

**B. Riddick's Claims**

The court construes Riddick's complaint as asserting the following four claims:

> **Claim 1**: Defendants violated the First Amendment when they "discriminated against" Riddick by not placing him back in the SIP/SAM pod;
>
> **Claim 2**: Defendants violated the Eighth Amendment "by being deliberately indifferent to [Riddick's] housing and mental health needs, and mental health and by subjecting [him] to cruel, unusual and inhumane punishment";
>
> **Claim 3**: Defendants violated Riddick's Fourteenth Amendment due process rights by "not providing [him] and placing [him] in a pod that met [his] needs"; and
>
> **Claim 4**: Defendants' actions constituted willful and wanton negligence in violation of state law.

(Defs.' Mem. Supp. Mot. Dismiss 2 (citing Compl. 9–10, ECF No. 1).) Riddick does not dispute this characterization of his claims in what the court is deeming his response (Dkt. No. 29).

4

## II.  DISCUSSION

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[6]  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.  *Pro se* complaints are afforded a liberal construction.  *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### B.  Statute of Limitations

Defendants first claim that all of plaintiff's claims are barred by the statute of limitations.  They correctly note that a court may dismiss a complaint, even summarily without a motion to dismiss, when it is clear from the face of a § 1983 complaint that a claim is barred by the applicable statute of limitations. *Cf. Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 956 (4th Cir. 1995) (en banc).

A § 1983 claim based on events that occurred in Virginia is subject to Virginia's statute of limitations for general personal injury claims, *see Owens v. Okure*, 488 U.S. 235, 239–40 (1989), which requires that an action be brought within two years of its accrual. Va. Code Ann. § 8.01-243(A); *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011)

---

[6] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

(explaining that the statute of limitations for § 1983 claims is the state limitations period for personal injury actions and in Virginia, that period is two years).  The two-year period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  *A Soc'y Without A Name*, 655 F.3d at 348.  The time period is tolled during the period when a prisoner is exhausting his administrative remedies, *Battle v. Ledford*, 912 F.3d 708 (4th Cir. 2019), but Riddick's complaint does not specify the length of time it took him to exhaust.

The primary dispute between the parties as to the statute-of-limitations issue is whether Riddick's complaint is properly viewed as a single violation of his constitutional rights that occurred when he was first denied placement in the SIP/SAM unit in 2017, discrete violations caused by every subsequent denial to return him to that unit, or a single continuing violation based on a pattern or practice.  Defendants argue that "[t]his is not a continuing constitutional violation case" because it does not involve "continual unlawful acts," but only "continual ill effects from an original violation."  (Defs.' Mem. Supp. Mot. Dismiss 6 (citing *Nat'l Advertising Co. v. Raleigh*, 947 F.2d 1158, 1166–67 (4th Cir. 1991)).  They insist that the claim accrued in 2017, when Riddick's first request to return to the SIP/SAM was denied, because he knew of the injury then.

Riddick counters that his complaint is not "about being denied the SIP in 2017"; it is "about being denied that pod from 2018 through 2020."  (Pl.'s Opp'n 3–4.)  Effectively, he is challenging the continuing—or repeated—failures to return him to that pod.  Neither side has cited to a case addressing whether, on these facts, there is a continuing violation alleged, or the proper analysis for these facts.

Based on its own research, and at least in ruling on a motion to dismiss, the court cannot conclude that Riddick's complaint clearly shows that his claims are barred so as to grant a motion to dismiss.  Several Fourth Circuit cases support the court's conclusion.  First, in a

6

slightly different context, the Fourth Circuit has squarely held that an Eighth Amendment claim of continuing deliberate indifference to a serious medical need can constitute a continuing violation for statute-of-limitations purposes. *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018). In *DePaola*, the plaintiff requested treatment for both physical and mental health conditions, alleging that defendants had continued to deny him all treatment for more than a decade. *Id.* at 485. The *DePaola* Court concluded that where a plaintiff has alleged a continuing violation of deliberate indifference, the statute of limitations beings to run on the date, if any, on which adequate treatment was provided, and may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act. *Id.* at 487.

Similarly, in *Hill v. Hampstead Lester Morton Ct. Partners LP*, 581 F. App'x 178, 180–181 (4th Cir. 2014), the court addressed a Rehabilitation Act claim, which—like the claim here—commences "when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Id.* at 180 (citing *A Soc'y Without A Name*, 655 F.3d at 348). There, the plaintiff's leg was amputated after she had lived in the same apartment for decades. Afterward, she asked her landlord repeatedly—over a course of years—to install a wheelchair ramp or to transfer her to a handicapped-accessible unit in the same complex. She made specific requests in 2004, 2005, 2006, and then in 2010 via counsel. The first two times, she was told that her request would be accommodated during renovations that would soon occur or were occurring. In 2006 and again in 2010, her request was denied. She filed suit in 2012, and defendants argued that her claims were time-barred because the three-year limitations period began to run—at the latest—when her request for accommodations was denied in 2006. Her 2010 request, they argued, amounted to a mere motion to reconsider and, as such, her claims were time-barred. *Id.* The district court agreed with defendants and entered judgment in their favor.

The Fourth Circuit reversed. It held that each failure to accommodate constituted a

7

discrete act, and it determined that acts that occurred within the three-year limitations period could be asserted, but those that occurred more than three years ago were separate, discrete acts that were time-barred. Thus, plaintiff's claim based on the 2010 denial was not time-barred, but her earlier claims were. *Id.* at 181.

Here, at the very least, Riddick's claims related to subsequent denials of his request to be transferred to the SIP/SAM units (within the two years of filing the complaint) are likely discrete acts and not time barred. Based on Riddick's allegations, this is not a situation where a decision was made once, and then the plaintiff continued to complain about it. In such a case, it would circumvent the purpose of limitations periods if a plaintiff were allowed to revive a barred claim simply by continuing to complain about a past decision. Riddick's complaint, however, plausibly alleges that multiple, discrete decisions were made denying him housing in the SIP/SAM pod, including in the two years preceding the filing of the complaint. Thus, it is not clear from the complaint that all of his claims are time barred. *Cf. Reyes v. Clarke*, No. 3:18CV611, 2019 WL 4044316, at *28–29 (E.D. Va. Aug. 27, 2019) (declining to dismiss as time-barred a Virginia inmate's claim that he was denied accommodations for his mental health when housed in a Step-down Program where defendants did not adequately address the affirmative defense or when the most recent discrete act of discrimination allegedly occurred).

Alternatively, the analysis in *DePaola* might apply and render all of Riddick's claims timely as a pattern of continuing deliberate indifference, beginning when he first sought a return to the SIP/SAM in 2017, and continuing through the filing of the complaint. Put differently, Riddick at least alleges an ongoing failure to provide him with a pod suited to his mental health needs, which is similar to the continued denial of treatment in *DePaola*. *See also Estate of Fisher v. City of Annapolis*, Civil Action No. CCB-21-1074, 2022 WL 959310, at *9 (D. Md. Mar. 30, 2022) (denying motion to dismiss on limitations grounds where plaintiff's decedent had

8

made numerous complaints about mold in his apartment and was ignored or the mold was improperly remediated and concluding that "repeated denials in the face of recurring complaints are sufficient pleading of either discrete actions or continuing violations in line with an allegedly discriminatory policy"). Accordingly, defendants are not entitled to dismissal on the grounds that Riddick's claims are time-barred.

## C. Failure to State A Claim

Defendants next contend that Riddick's claims fail because he has failed to state a claim. The court agrees.

### 1. First Amendment Claim

Turning first to Riddick's First Amendment claim, this claim fails because he does not allege how his removal from the SIP/SAM unit, or failure to return him there, implicated his First Amendment rights. To state a First Amendment claim, he must allege facts showing an effect on or interference with his right to freedom of speech, religion, or assembly. *See* U.S. Const. amend I. Nowhere does Riddick explain how the failure to place him in the SIP/SAM unit violated his First Amendment rights. This claim fails.

### 2. Eighth Amendment Claim

As for Riddick's Eighth Amendment claim, it is unclear whether it is more properly construed as a conditions-of-confinement claim or a claim of deliberate indifference toward his mental health needs.[7] Under either alternative, though, his claim fails because he has not alleged sufficient facts to show that any of the defendants were deliberately indifferent either to a serious

---

[7] The allegations here overlap, to some degree, with Riddick's claims of deliberate indifference to his mental health needs during the same time-period, which he raised against defendant Kiser (and others) in a separate action. *See Riddick v. Trent*, No. 7:20cv00447, 2023 WL 2137544 (W.D. Va. Feb. 21, 2023). Except as to one defendant—who is not a defendant here—the presiding judge in that case found in favor of defendants and granted their motion for summary judgment on those claims. *Id.* at *1. To avoid any res judicata or collateral estoppel issues, the court construes his claim here only as challenging the denial of a housing assignment in the SIP/SAM pod, and not a direct claim that defendants were deliberately indifferent by depriving him of mental health treatment.

risk of significant harm or to a serious medical need.

To adequately allege a conditions-of-confinement claim, a prisoner must set forth facts showing that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The objective prong requires the prisoner to "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm." *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Similarly, for a deliberate-indifference-to-medical-needs claim, a prisoner must show that he has a "serious medical condition," which is one that has been diagnosed as requiring treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).

To satisfy the second prong, the prisoner must show that a correctional officer was actually aware of a serious risk of significant harm to the prisoner and disregarded it. *Shakka,* 71 F.3d at 166; *see also Gordon*, 937 F.3d at 357 (explaining that a defendant must have "actual knowledge" of the plaintiff's serious medical needs and the related risks, but disregard them). This is an "exacting standard." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Riddick's claim here is thorny because it is intertwined to some degree with his claims in another pending case.[8]  Specifically, the primary injury alleged by Riddick is that his placement

---

[8] Allegations of damages stemming from his continued placement in segregation are the primary claims he brought in another, earlier pending action, a putative class action in which Riddick is a class representative. *See Thorpe v. Va. Dep't of Corr.*, No. 2:20-cv-00007-JPJ-PMS (W.D. Va.), May 6, 2019 Compl., ECF No. 1 (alleging that the named plaintiffs, which include Riddick, suffered severe physical and mental health injuries as a result of their placement in long-term solitary confinement). But defendants have not raised the defense of claim-splitting in their motion to dismiss, and it is an affirmative defense that can be waived. *See generally Lee v. Norfolk S. Ry. Co.*, 187 F. Supp. 3d 623, 629 (W.D.N.C. 2016). Thus, the court does not address it further.

*in segregation* caused him severe emotional injuries. Although his placement in segregation is related to his denial of placement in SIP/SAM, it is a weak causal relationship, at best. Riddick was housed in segregation only because, after being removed from the SIP/SAM, he refused to be housed in his assigned unit. Moreover, his continued placement in segregation presumably has based on disciplinary or other factors, which he does not address in his complaint. And there is nothing to suggest that, even if he were removed from segregation, he would be housed in the SIP/SAM pod.

Even if Riddick's allegations about his deteriorating mental health sufficiently stated severe emotional injuries actually caused by being denied placement in the SIP/SAM pod (as opposed to his continued placement in segregation), he cannot satisfy the subjective prong of an Eighth Amendment claim. As noted, to satisfy that prong, the prisoner must show that a correctional officer was actually aware of a serious risk of significant harm to the prisoner and disregarded it. *Shakka*, 71 F.3d at 166.

Riddick's claims do not satisfy this high standard. First of all, he does not allege—and in fact, his own allegations disprove—that he could not receive mental health services in other housing units. For example, his complaint alleges that he was being seen by a psychiatrist and a counselor, at least as early as 2018. (Compl. 6.) Thus, the mere fact that he was not housed in the SIP/SAM pod does not mean that he would be—or was—wholly deprived of any mental health treatment. Nor does he allege that any of the defendants believed that he would be wholly deprived of mental health treatment if he were not in the SIP/SAM pod.

Essentially, Riddick alleges that he repeatedly told defendants, either as ERT members or in letters or verbal complaints during rounds, that he wanted to be housed in the SIP/SAM pod and believed it was an appropriate unit for him. But nothing about that fact suggests that any defendants would have known it would cause a substantial risk of harm to him not to be placed

in that unit.

Indeed, although he alleges that his treating psychiatrist recommended him for that unit, nowhere does he state that any of the defendants were made aware of that fact or that they had access to that record. And even if they did, Riddick nowhere alleges that he was medically *ordered* to be housed in the SIP/SAM unit, only that his psychiatrist recommended such placement and thought it would be a "good fit." Put differently, he does not allege that his psychiatrist—or anyone else—opined that it was medically necessary that he be housed that unit or that it was the only appropriate housing placement.

This case is akin to *Satterfield v. Hicks*, No. 3:19CV170, 2019 WL 6312562 (E.D. Va. Nov. 25, 2019). The plaintiff in *Satterfield*, like Riddick, "clearly desired to be in the mental health pod." *Id.* at *3. But the court concluded that "his disagreement with the decision to house him in general population fails to state an Eighth Amendment claim." *Id.* (citations omitted). As in that case, Riddick "does not allege facts suggesting that Defendants recognized that housing [Riddick] in the general population pod was inappropriate, much less subjected [him] to a substantial risk of serious harm." *See id.*; *cf. Godfrey v. Russell*, No. 7:14CV00476, 2015 WL 5657037, at *8 (W.D. Va. Sept. 24, 2015) (explaining that inmate's desire to be in the mental health pod, which was not based on safety concerns, was insufficient to state a claim against the mental health coordinator, who concluded he need not be housed in that pod).

For all of these reasons, Riddick has failed to adequately allege an Eighth Amendment violation.

### 3. Fourteenth Amendment Claim

The court turns next to Riddick's third claim—his allegation that defendants deprived him of "due process." The Due Process Clause of the Fourteenth Amendment encompasses three types of claims enforceable under § 1983: (1) claims for violations of rights enshrined in

12

the Bill of Rights and incorporated against the states; (2) claims under the substantive component of the Due Process Clause, which "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them'"; and (3) claims under the procedural component of the Due Process clause, which contains a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

To the extent Riddick's claim could be construed as a procedural due process claim, it fails. "There is no constitutional right for an inmate prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 634 (D. Md. 2020) (collecting authority). Nor has Riddick alleged facts to show that his placement in a general population unit (or his refusal of that housing assignment, which led to his placement in segregation) caused him to experience conditions that imposed an atypical and a significant hardship, as required to trigger constitutional due process protections. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Further, as noted *supra* note 8, the constitutionality of his placement in segregation, which is not the equivalent of his non-placement in the SIP/SAM pod, is being litigated in another pending action. That action specifically includes a procedural due process claim arising from long-term placement in segregation. *See Thorpe v. Va. Dep't of Corr.*, No. 2:20-cv-00007-JPJ-PMS (W.D. Va.), May 6, 2019 Compl. 88, ECF No. 1.

To the extent Riddick is attempting to assert a substantive due process claim, his attempt also fails. The Supreme Court has directed that where the explicit textual source of constitutional protection applies to government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, as already noted, Riddick's being denied

placement in a particular housing unit that he says he needs for his mental health treatment, is properly construed as an Eighth Amendment claim, and the court has analyzed it as such. Pursuant to *Graham*, the court should not also treat it as a substantive due process claim. *See, e.g., Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442, at *10 (S.D.W. Va. Sept. 27, 2016). Riddick's Fourteenth Amendment claim must be dismissed.

### 4. State-Law Claim of Willful and Wanton Negligence

Riddick's complaint also describes defendants' actions as constituting "willful and wanton negligence." (Compl. 10.) Because all of plaintiff's federal claims are being dismissed, the court will decline to exercise jurisdiction over any state-law claims. *See* 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

For the foregoing reasons, Riddick's complaint fails to state a claim against any of the defendants and must be dismissed. To the extent his opposition is a motion for summary judgment, it will be denied as moot. Lastly, Riddick's request for "urgency" in deciding this case is likewise denied as moot.

An appropriate order will be entered.

Entered: March 20, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge